## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI RANKIN,                                    )
                                                )
                   Plaintiff,                   )
                                                )      Civil Action No. 2:12-cv-01373
            v.                                  )
                                                )      Judge Mark R. Hornak
MICHAEL SMITHBURGER, *Official*                 )
*Constable of the Commonwealth of*              )
*Pennsylvania*, and CORRENA L.                  )
SMITHBURGER, *his wife*, a/k/a                   )
CORRENA L. SWIDANTEK,                           )
                                                )
                   Defendants.                  )

## OPINION

**Mark R. Hornak, United States District Judge**

While this civil rights case has its genesis in allegations of the blatant abuse of power by a local state constable in a small corner of a rural Pennsylvania county, it nonetheless implicates evolving legal principles applicable to litigation aimed at vindicating important constitutional rights that require a rather detailed analysis.

Pending before the Court is Defendants Correna and Michael Smithburger's (collectively, "Smithburgers") Motion to Dismiss Plaintiff Lori Rankin's Second Amended Complaint, ECF No. 22. The Court has considered Plaintiff's Second Amended Complaint, ECF No. 21, the pending Motion, Plaintiff's Response, ECF No. 24, and the briefs in support of and in opposition to these motions, ECF Nos. 23, 25, and heard oral argument on January 24, 2013. The matter is ripe for disposition, and, for the reasons that follow, the Motion is granted in part and denied in part.

## I.    BACKGROUND

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations in the Second Amended Complaint as true and draw all reasonable inferences in the Plaintiff's favor. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purposes of the disposition of Defendants' Motion, the essential facts are as follows.

In July 2010, Lori Rankin was renting a residential property located in Fayette County, Pennsylvania from Correna Smithburger. 2d Am. Compl. ¶ 10, ECF No. 21. Although there were a number of areas inside and outside the residence in need of repair, the two agreed that Mrs. Smithburger would give Ms. Rankin a credit for repairs the latter made to the house. *Id.* ¶¶ 11-12. Ms. Rankin spent about $1000 in making those repairs, for which she was never compensated. *Id.* ¶¶ 13-14.

On July 21, 2010, Ms. Rankin received a 30 day eviction notice from Mrs. Smithburger, *id.* ¶ 16, who filed a Landlord/Tenant eviction complaint in state court on August 9, 2010, *id.* ¶ 22. On August 30, 2010, Magisterial District Judge Mike Delfino ("the MDJ") entered judgment in favor of Mrs. Smithburger, which apparently awarded her both money damages and possession of the residence. ECF No. 19-2 at 16.[1] On September 14, 2010, Mrs. Smithburger requested and received from the MDJ an order of possession, which ordered "Michael Mucy (Sheriff or Certified Constable)" to forcibly effect an eviction of Ms. Rankin, if necessary, on September 24, 2010 at 12:01 a.m. ECF Nos. 21-1, 21-2.

---

[1] *See also Smithburger v. Rankin*, Dkt. No. MJ-14203-LT-000130-2010. Plaintiff attached a copy of the judgment as an attachment to her First Amended Complaint, ECF No. 19, but not her Second. However, a state court docket is a "public record" that the Court may consider at the motion to dismiss stage, *see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), and the Court takes judicial notice of the state court docket and records. *See Dec v. Pennsylvania State Police*, 2:12-CV-565, 2012 WL 6099078, at *2 n.3 (W.D. Pa. Dec. 7, 2012).

As is turned out, Mrs. Smithburger's husband, Michael Smithburger, was an official constable of the Commonwealth of Pennsylvania. *Id.* ¶ 4. Together, Mr. and Mrs. Smithburger allegedly participated in an unlawful eviction of Ms. Rankin by taking the following actions:

- On September 14, the Smithburgers removed some of Plaintiff's personal property from the residence. *Id.* ¶ 25. They told a local law enforcement officer that Mr. Smithburger was a constable, and that they were seizing Plaintiff's possessions because they were going to have a Sheriff's sale, and that Ms. Rankin had only twenty minutes to evacute and remove her personal items. *Id.* ¶ 26.

- On September 15 and 16, the Smithburgers removed more of Plaintiff's property from the residence. *Id.* ¶ 31.

- On September 16, the Smithburgers removed and/or destroyed Plaintiff's personal property by throwing some of it in a burn pit and setting it ablaze while Plaintiff watched. *Id.* ¶ 32. On that same date, Ms. Rankin called the police and was thereafter charged with disorderly conduct. *Id.* ¶ 33.

- On September 23, when Ms. Rankin and some friends and relatives were attempting to remove her items from the residence, Mr. Smithburger arrived, identified himself as a constable, and "ordered the Plaintiff off the property and stated that he was seizing her property and changing the locks . . . [and] that if Plaintiff did not leave, he would have her arrested." *Id.* ¶¶ 35-36. He also would not allow Ms. Rankin to get her minor son's medicines, crutches, and bedside commode. *Id.*

- On September 24, the Smithburgers burned Plaintiff's mattress, box springs, her son's bed, and other personal possessions. *Id.* ¶ 37.

Ms. Rankin filed this suit in this Court on September 21, 2012, alleging that the Smithburgers conspired to deprive, and did in fact deprive, her of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983, and committed various state law torts. ECF No. 1.

At oral argument on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, the Court ordered that, to the extent that Ms. Rankin asserted claims against Mr. Smithburger in his official capacity, they would be dismissed with prejudice. Plaintiff was also given leave to amend her Complaint a second time in order to plead her factual allegations more

precisely, ECF No. 20, which she then filed on February 14, 2013, ECF No. 21. Defendants move to dismiss the Second Amended Complaint for failure to state a claim under Fed R. Civ. P. 12(b)(6) under an assortment of legal theories. The Court will address each of Defendants' arguments in turn.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

## III.    DISCUSSION

### A. FEDERAL CONSTITUTIONAL CLAIMS

Section 1983 provides a federal cause of action for an alleged violation of an individual's constitutional rights. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). To prevail on such a claim, a plaintiff must meet two essential elements: "first, that she was deprived of a constitutional right and, second, that the alleged deprivation was 'committed by a person acting under color of state law.'" *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) ("*Harvey II*") (quoting *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) ("*Harvey I*")).

4

Whether a constitutional violation is claimed to have occurred is also a prerequisite for a § 1983 defendant's assertion of qualified immunity, one of the bases for dismissal asserted here. In general, the doctrine of qualified immunity shields government officials from defending a claim of civil liability when they perform discretionary functions. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). A government official, such as a police officer, will be entitled to qualified immunity from suit unless (1) the officer's conduct violated a constitutional right possessed by the plaintiff and (2) the right was "clearly established" at the time of the officer's allegedly unconstitutional conduct. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009). These two steps need not be applied in sequence, which allows a trial court to exercise its discretion to craft the most effective analysis given the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236, 242 (2009). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Gilles v. Davis,* 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)). Because qualified immunity is not merely a defense to liability, but renders a defendant completely immune to suit, a court should determine at the earliest possible stage whether a grant of qualified immunity would be proper given the facts of the case taken in the light most favorable to the plaintiff. *Giles*, 571 F.3d at 325-26. Here, qualified immunity would potentially apply only to the actions of Mr. Smithburger, the state official, and not Mrs. Smithburger, a private actor. *See Wyatt v. Cole*, 504 U.S. 158, 169 (1992).

## 1. Statute of Limitations

Defendants first argue that most of Plaintiff's claims should be dismissed because they occurred outside the statute of limitations.[2] The Third Circuit has recently summarized the relevant rules surrounding the statute of limitations for a § 1983 case in Pennsylvania.

> The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato,* 549 U.S. 384, 387 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons. Stat. § 5524(2); *see also Kost v. Kozakiewicz,* 1 F.3d 176, 189-90 (3d Cir. 1993). Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998) . . . . The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. *Barren v. United States,* 839 F.2d 987, 990 (3d Cir. 1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. *See United States v. Kubrick,* 444 U.S. 111, 120 (1979).

*Kach v. Hose,* 589 F.3d 626, 634-35 (3d Cir. 2009). The statute of limitations expires on the anniversary date of the event in issue. *Monkelis v. Mobay Chem.,* 827 F.2d 937, 938 (3d Cir. 1987). Here, Plaintiff filed her Complaint on September 21, 2012, so any § 1983 claims that accrued before September 21, 2010, would be barred by the statute of limitations.[3] Plaintiff makes two arguments as to why the Smithburgers' actions before September 21, 2010 should be permitted to form the basis of her § 1983 claims. First, she invokes the "continuing violations" doctrine as to her underlying claims; second, she suggests that at least regarding her conspiracy

---

[2] "A statute of limitations defense may be asserted in a motion to dismiss under Rule 12(b)(6) 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *Frasier-Kane v. City of Philadelphia,* 12-1757, 2013 WL 1277021, at *1 n.1 (3d Cir. Mar. 29, 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 1 (3d Cir.1994)).

[3] The statute of limitations period did not end on a Saturday, Sunday, or legal holiday, and therefore September 21, 2010 remains the appropriate cutoff date. *See* Fed. R. Civ. P. 6(a).

claim, acts that took place before the statute of limitations can be swept in as part of the timely-filed conspiracy claim as a whole.

### a. Continuing Violations Doctrine

Because many of the events underlying Plaintiff's claims straddle the two-year statute of limitations, Plaintiff relies on the continuing violations doctrine to argue that events that occurred before September 21, 2010, may be considered along with those after. Our Court of Appeals has described this doctrine as follows:

> The continuing violations doctrine is an equitable exception to the timely filing requirement. Thus, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal quotations omitted). The state of the continuing violations doctrine in this Circuit, until recently, was not well settled. Initially, our Court of Appeals adopted from the Fifth Circuit a non-exhaustive list of three factors for applying the doctrine, considering (1) the subject matter of the violations; (2) their frequency; and (3) their degree of permanence, of which the third factor was the most important. *See Cowell*, 263 F.3d at 292 (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 n.9 (3d Cir. 1995)); *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481-82 (3d Cir. 1997) (citing *Berry v. Bd. of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983)). After those cases were decided, the Supreme Court espoused its view of the continuing violations doctrine in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which

> established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a ... claim. The former must be raised within the applicable limitations period or they will not support a lawsuit... The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.

*O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (discussing *Morgan*). While

*Morgan* was a Title VII case, the Third Circuit made clear that it "appl[ies] with equal force to §

1983 claims." *O'Connor*, 440 F.3d at 128.[4]

However, even after *O'Connor*, courts in this Circuit wavered as to whether the *Morgan*

"discrete acts" inquiry supplanted the three-factor test for continuing violations, or instead

"affirmed" it. *E.g. Voices for Independence (VFI) v. Pa. Dep't of Transp.*, CIV.A. 06-78, 2007

WL 2905887 (W.D. Pa. Sept. 28, 2007) (collecting cases; concluding *Morgan* did not abrogate

three-factor approach). But if it was unclear whether *Morgan* and *O'Connor* buried *Cowell* and

*West*, it was *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013) that put the nail in

the coffin. In *Mandel*, the Third Circuit took the question of *Morgan*'s reach head on, ruling that

*Morgan* did, in fact, "supersede[ the] opinions in *West* and *Rush* to the extent that they adopted

[the three-factor approach in] *Berry*," and that "[i]t is clear that there is no longer a permanency

requirement under the continuing violation doctrine." 706 F.3d at 166.[5] While the court in

*Mandel* did not mention its prior decision in *Cowell*, 263 F.3d 286, on which Plaintiff relies, it is

clear that that opinion also was superseded by *Morgan* to the same extent as *West. See Cowell*,

263 F.3d at 292 (citing *West* and *Berry* for three-factor approach).

---

[4] Although *O'Connor* was also an employment case, *see* 440 F.3d at 125 ("the distinction between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but rather a generic feature of employment law"), there is no reason to believe that its reasoning is limited to only that species of § 1983 cases. First, *O'Connor* cited favorably for the proposition that *Morgan* has been applied "to § 1983 cases" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002), a non-employment Due Process § 1983 case. Moreover, district courts in this Circuit have not limited its application to employment cases. *See, e.g., Hynoski v. Columbia Cnty. Redevelopment Auth.*, 4:10-CV-2222, 2013 WL 1703585 (M.D. Pa. Apr. 19, 2013) (citing *MFS, Inc. v. Dilazaro*, CIV.A. 08-2508, 2009 WL 3081569, at *9 n.8 (E.D. Pa. Sept. 25, 2009)). Therefore, *Morgan* and *O'Connor* apply here, and to § 1983 cases more broadly.

[5] In particular, *Mandel* reversed the District Court for ruling that the plaintiff's claims "failed the permanency requirement because [plaintiff] should have been aware of the need to assert her rights but did not pursue her [hostile work environment] claim with reasonable diligence," and held instead that because a hostile work environment claim is but one unlawful employment practice, the individual events were sufficiently non-discrete such that the plaintiff could use the continuing violation theory. 706 F.3d at 166. (internal quotation omitted).

Therefore, under *Mandel* and *Morgan*, the inquiry here is rather straightforward: if the alleged violations committed by Defendants before September 21 were "discrete," they are time-barred and do not survive under the continuing violations doctrine.

> The difference between a discrete act and a non-discrete act, according to *O'Connor* and *Morgan,* is that discrete acts are "easy to identify." The Supreme Court held in *Morgan* that non-discrete acts necessarily "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan,* 536 U.S. at 115. The term "non-discrete acts" has been interpreted by at least one district court in this Circuit to mean activity taking place "behind the scenes," such as internal memoranda, e-mails, or letters suggesting a pattern of unlawful conduct. *See Hayes v. Del. State Univ.,* 726 F. Supp. 2d 441, 455 (D. Del. 2010).

*Hankin Family P'ship v. Upper Merion Twp.*, CIV.A. 01-1622, 2012 WL 43599, at *11 (E.D. Pa. Jan. 6, 2012).

Here, the alleged acts that occurred before September 21 were that on September 14, 15, and 16, the Smithburgers unlawfully entered Plaintiff's residence and removed her personal property and burned some of it, 2d Am. Compl. ¶¶ 24, 31, 32, and that on September 14, Defendants told a law enforcement officer that because Mr. Smithburger was a constable, they were seizing Plaintiff's property and she had 20 minutes to retrieve her belongings and that the locks would be changed, *id.* ¶ 25. The alleged acts that occurred after September 21 included other instances of the Smithburgers' entries into the residence and destruction of Ms. Rankin's personal property, and an unlawful eviction of Ms. Rankin on September 23. *See id.* ¶¶ 34-37.

Under the facts here, it is plain that the alleged wrongs committed by Defendants prior to September 21, 2010, namely seizures of property and entries into the home, were sufficiently "discrete." They occurred over a short period of time and were easily identifiable by the victim, and indeed Plaintiff alleges that she watched them occur and tried to prevent them. *See id.* ¶¶ 32, 33. Each act would have constituted an independent tort, complete when the property had been

unlawfully seized or when the home had been unlawfully searched. They do not constitute the type of non-discrete acts, like a hostile work environment, for which a plaintiff may take advantage of the continuing violations doctrine. Therefore, the only underlying claims that survive are those surrounding the events on or after September 21, 2010, *see id.* ¶¶ 34-37, and all claims relying on events beforehand are dismissed with prejudice.

### b. *Conspiracy Claims*

Next, Plaintiff argues that even if her claims for Defendants' underlying acts before September 21 do not survive, those acts may be considered as part of her § 1983 conspiracy claim. According to Plaintiff, because "the statute of limitations does not begin to run until the commission of the last overt act" in the conspiracy, which occurred on September 24, 2010, all of the events going back to September 14 can also be considered as part of the conspiracy. Pl.'s Resp. at 6-7, ECF No. 25. In this Circuit, however, as a matter of federal law the statute of limitations for a conspiracy claim runs from "*each* overt act causing damage." *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993) (emphasis added). Indeed, the Third Circuit has explicitly rejected the "last overt act rule," which "would invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period." *Id.* (quoting *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984)). Therefore, under *Kost*, the time-barred violations occurring before September 21, 2010 may also not be considered as "overt acts" that make up Plaintiff's conspiracy claim.

### 2. **State Action**

Defendants also argue that Plaintiff cannot state any claim under § 1983 because Defendants did not act under color of state law. Action under color of state law "requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible

only because the wrongdoer is clothed with the authority of state law." *Harvey II*, 635 F.3d at 609-10 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). "'It is [also] clear that under 'color' of law means under 'pretense' of law.' Thus, one who is without actual authority, but who purports to act according to official power, may also act under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). "Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations." *Id.* The Third Circuit has held, in the context of a "private repossession," that an officer engages in state action when he "takes an active role and assists in the repossession." *Harvey II*, 635 F.3d at 610.

Here, under the facts as pled, Mr. Smithburger both acted under pretense of law and took an active role in the events. On September 23, when he "ordered the Plaintiff off the property and stated that he was seizing her property," he "identified himself as a Fayette County Constable." 2d Am. Compl. ¶ 34. He also identified himself as a constable when speaking with a law enforcement officer on September 14, 2010 and told him that he was having a "Sheriff's sale" of Plaintiff's property. *Id.* ¶ 25.[6] Therefore, Plaintiff has sufficiently plausibly pled that Mr. Smithburger was not only acting as Mrs. Smithburger's husband when he entered Ms. Rankin's home, destroyed her property, and evicted her, but was acting under the pretense of his authority as a constable of Fayette County. Plaintiff has also plausibly pled his active involvement – he directly entered her home, destroyed her personal property, and apparently

---

[6] While the Court has determined that the events of September 14, to the extent that they support claims of constitutional violations, are outside the statute of limitations, the Court may still consider them as background facts illustrating in what manner Mr. Smithburger was acting during the events that are not time-barred. In other words, although the Court has determined the statute of limitations applies to bar claims arising from events occurring before September 21, that does not mean that they cannot be considered as background information in determining whether Plaintiff has stated a plausible claim for relief under the *Twiqbal* standard.

removed her from her residence. It does not matter that Mr. Smithburger may have been motivated by a desire to help his wife if he abused his state authority in so doing.

Defendants next argue that even if Mr. Smithburger acted under color of state law, Mrs. Smithburger did not. Defendants correctly acknowledge that a private party is liable under § 1983 if she "willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right." *Abbott*, 164 F.3d at 147-148 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). However, Defendants direct their focus only to the four particular events surviving the statute of limitations to argue that Mrs. Rankin's involvement in them was not sufficiently pled, and even further that "there is no evidence that Correna Smithburger knew . . . of the actions of Michael Smithburger on September 23." Defs.' Br. Support Mot. Dismiss at 5, ECF No. 23. Defendants view the Second Amended Complaint, and *Twiqbal*, too strictly. Mrs. Smithburger's actions in seeking, and finally achieving, the eviction of her tenant permeate the Second Amended Complaint. *See* 2d Am. Compl. ¶¶ 16-22, 25-26, 29, 31, 32, 37. To be sure, Mrs. Smithburger's involvement in the events occurring exactly on September 23, 2010 was not specifically pled in paragraphs 34 and 35. But the Court declines Defendants' invitation to consider only the four paragraphs of the Second Amended Complaint (¶¶ 34-37) that describe the events of September 23 and 24, 2010 as if they occurred in a vacuum.

The plausible story that emerges from the Second Amended Complaint is that a landlord wife and a constable husband conspired to use the latter's state power to serve the ends of the former. The two allegedly were both personally involved in a number of the alleged wrongs Ms. Rankin suffered, and therefore their willful joint participation and conspiracy can be easily plausibly inferred under the *Twiqal* standard to span the events occurring on or after September 21, 2010. *See Abbott*, 164 F.3d at 141 (where constable acted "at the instance and request of"

private party, and "joint action" in repossession alleged, § 1983 claims against private party survived summary judgment). Therefore, Plaintiff has plausibly alleged state action on the part of both of the Smithburgers, and the § 1983 claims against them will not be dismissed on that ground. It is also by alleging this joint involvement that Plaintiff has properly pled a § 1983 conspiracy claim covering the events that survive the Motion to Dismiss, which are analyzed below.

**3. Constitutional Violations**

Having delineated the appropriate timeframe for the claims that may be considered, and having concluded that the "state action" prong of § 1983 has been satisfied, the Court now turns to whether Ms. Rankin's allegations of violations of her Fourth Amendment, Fourteenth Amendment Procedural Due Process, Fourteenth Amendment Substantive Due Process rights have been sufficiently pled, and whether Mr. Smithburger is entitled to qualified immunity for any of them. The allegations support three major constitutional claims: seizure of personal property; entry into the home; and seizure of real property/eviction.

*a. Seizure of Personal Property*

Ms. Rankin alleges that on September 23 and 24, Defendants seized a number of her personal items, burned some of them, and at least deprived her of access to some of them. 2d Am. Compl. ¶¶ 34, 36, 37.

i. Fourth Amendment

The Fourth Amendment, incorporated to the states by way of the Fourteenth Amendment, protects an individual against an unlawful search or seizure by providing that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.; *Miller v. Hassinger*, 173 F. App'x

948, 952 (3d Cir. 2006). "A Fourth Amendment 'seizure' of personal property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The destruction of personal property constitutes such an interference. *Id.* Ms. Rankin certainly enjoyed a possessory interest in her personal property, by virtue of her ownership of it, located inside the apartment.

> For a seizure to be unlawful, it must also be unreasonable.

> [W]hen the state claims a right to make a warrantless seizure, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. Even when the state's interest is sufficiently compelling to justify a warrantless seizure that is minimally intrusive, the seizure will be unreasonable if it is disproportionately intrusive.

*Id.* at 210 (internal quotation omitted). According to the Complaint, the Smithburgers seized Ms. Rankin's property at least by denying her access to it on September 23, one day before the Magistrate District Judge's order on its face entitled Ms. Smithburger even to possession of the residence. The Court does not have difficulty in concluding that such a seizure would have therefore been "unreasonable," because the government would have assumedly had no legitimate interest to vindicate on that date. The same goes for Plaintiff's allegations of the burning of her property on September 24 – even if Mrs. Smithburger was entitled to possession of the residence on that date, it was "disproportionately intrusive," and therefore not "reasonable," *see id.*, to destroy Ms. Rankin's personal property by burning it in front of her on that very day. While it may have been reasonable to remove personal possessions from the property once Mrs. Smithburger lawfully possessed it, it was not reasonable to destroy them completely.

As for whether Mr. Smithburger's actions are shielded by qualified immunity, the right under the Fourth Amendment to be free from an unreasonable seizure of personal property was

well established at the time of their commission. *See Brown*, 269 F.3d at 211. For the reasons above, the Court concludes that the Second Amended Complaint has plausibly pled that seizures effected by Mr. Smithburger (and his wife) were unreasonable. Therefore, a reasonable officer in Mr. Smithburger's position would have realized that it was unlawful for him to seize and destroy Ms. Rankin's property, and he is not shielded by qualified immunity in so acting. *See Brown*, 269 F.3d at 211. Therefore, Plaintiff has adequately pled a constitutional claim for a Fourth Amendment seizure of her personal property on September 23 and 24, 2010.

### ii. Fourteenth Amendment Procedural Due Process

Fourteenth Amendment procedural due process creates a "guarantee of fair procedure" whereby an individual can assert that she was deprived of a life, liberty, or property interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "Property interests created by state law are protected under that amendment, *see Board of Regents v. Roth*, 408 U.S. 564 (1972), and destruction of such property by the state constitutes a "deprivation" thereof, *see Parratt v. Taylor*, 451 U.S. 527, 101 (1981)." *Brown*, 269 F.3d at 213. Therefore, it follows that Ms. Rankin was deprived of her personal property when it was seized and that she was entitled to process. However, procedural due process claims are subject to an important limitation: when the seizure of the property was a "random and unauthorized conduct of a state employee," "postdeprivation process" is all that is constitutionally due. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). The court in *Brown* held that in a case for the random and unauthorized seizure of personal property, Pennsylvania affords such postdeprivation process in the form of a civil action for conversion. *Id.*[7]

---

[7] The court in *Brown* also noted that under § 8550 of Pennsylvania's Political Subdivision Tort Claim Act, the officer tortfeasor would not be protected by sovereign immunity against state law torts. Here, Mr. Smithburger would also not be protected by statutory sovereign immunity, which does not extend at all to constables, who are "independent contractors" rather than "employees" of the Commonwealth or its various subdivisions. *Maloney v.*

Here, there is no evidence or allegation to suggest that Mr. Smithburger's conduct under the color of state law was not "random and unauthorized"; indeed, that seemed to be the very problem with it. Therefore, the fact that Ms. Rankin has available to her a state law claim for conversion affords her adequate postdeprivation process and bars her procedural due process claim here, and that claim will be dismissed.

    *b. Search/ Entry into the Home*

The Second Amended Complaint is not entirely clear on the matter, but it appears that Ms. Rankin alleges that at least at some time on September 23, Mr. Smithburger entered her home without her permission. 2d Am. Compl. ¶¶ 34-35, 51.

      i.  <u>Fourth Amendment</u>

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. . . . [w]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotations omitted). Here, Ms. Rankin has alleged an entry of her home on September 23 without a warrant or any governmental justification whatsoever. Defendants, in return, assert that as of September 23, "Plaintiff had been evicted by the Magistrate, failed to appeal the order of possession, had another order of possession granted and served upon her," and that therefore, Mr. Smithburger's conduct was reasonable. ECF No. 23 at 7-8. However, Defendants' assertions are belied by a reading of the state court docket, which indicates only that Mrs. Smithburger received a judgment in her favor in a landlord-tenant dispute on August 30, 2010. ECF No. 19-2 at 16.

---

*City of Reading*, CIV.A. 04-5318, 2006 WL 305440 (E.D. Pa. Feb. 8, 2006) *aff'd*, 201 F. App'x 853 (3d Cir. 2006) (citing *In Re Act 147 of 1990*, 598 A.2d 985, 986 (Pa. 1991)).

Under Pennsylvania law, on the tenth day following that judgment, she could "file with the magisterial district judge a request for an order of possession." Pa. R.C.P.M.D.J. 515(B)(1). The relevant documents reveal that on September 14, 2010, Mrs. Smithburger filed for such order, which was granted, and which stated on their face that forcible eviction would be permitted in 10 days, or on September 24. ECF No. 21-2.

The facts, viewed in the light most favorable to Ms. Rankin, therefore strongly suggest that any warrantless entry into the home before September 24 on the part of Mr. Smithburger would have been unlawful. Therefore, Ms. Rankin has properly pled that this event, if it occurred, constituted an unreasonable search of her home in violation of the Fourth Amendment.[8] Moreover, this "basic principle" is a well-established one of which any reasonable officer would have been aware, *see Groh v. Ramirez*, 540 U.S. 551, 564 (2004), and therefore qualified immunity does not shield Mr. Smithburger.

   i. Fourteenth Amendment Procedural Due Process

Plaintiff has not offered any, nor has this Court found any, case supporting the proposition that a warrantless search of the home, without more, constitutes a procedural due process violation under the Fourteenth Amendment. It is true that ordinarily, the "explicit source rule" only bars substantive, and not procedural, Fourteenth Amendment due process claims when they are "covered by a specific constitutional provision" such as the Fourth Amendment. *Torres v. McLaughlin,* 163 F.3d 169, 172 (3d Cir. 1998); *see infra* Part III.A.3.d. However, our Court of Appeals has sometimes deviated from this general rule, holding that "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis," and declined to consider such claims under the Fourteenth Amendment's standards. *Berg v.*

---

[8] Ms. Rankin does not assert in the Second Amended Complaint that she had any Fourth Amendment interest in her residence as of September 24, 2010 that Defendants violated.

*Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000); *see also Swedron v. Borough*, 08CV1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008) ("as 'the gravamen' of [plaintiff's] lawsuit is so clearly premised on a First and/or Fourth Amendment violation based upon his alleged malicious prosecution and arrest without probable cause, the Court will dismiss the procedural due process claim"); *Posey v. Swissvale Borough*, 2:12-CV-955, 2013 WL 989953, at *15 (W.D. Pa. Mar. 13, 2013) (collecting cases).

As in the context of an arrest without probable cause, an unreasonable entry into the home, without more, also quintessentially implicates the Fourth Amendment's protections, and forms the gravamen of this claim. Therefore, in the absence of any authority to the contrary, the Court will view Plaintiff's claims of an unreasonable search of the home under the rubric of the Fourth Amendment only, and will dismiss Plaintiff's claims under the Fourteenth Amendment's procedural due process component.

### c. *Seizure of the Home (eviction)*

Ms. Rankin alleges that Defendants "interfered with her right to enter her home" on September 23, 2010, in a manner that apparently constituted her eviction from the property at least one day before it would have been legally permitted. 2d Am. Compl. ¶¶ 34-35, 53.

### i. Fourth Amendment

The participation of a state official in an improper eviction can constitute a seizure in violation of the Fourth Amendment. "The Supreme Court has taken an 'expansive view of the concept of seizure,' as set forth in *Soldal v. Cook Cnty, Ill.*, 506 U.S. 56, 61-65 (1992) ('a Fourth Amendment 'seizure' of property occurs when there is some meaningful interference with an individual's *possessory interests* in that property.')". *Abbott v. Latshaw*, 164 F.3d 141, 149 (3d Cir. 1998) (emphasis added); *Gomez v. Feissner*, 474 F. App'x 53, 57 (3d Cir. 2012). Courts

have found such an interference in the case of an improper eviction. *See Soldal*, 506 U.S. 56; *Thomas v. Cohen*, 304 F.3d 563, 570 (6th Cir. 2002); *Snyder v. Daugherty*, 899 F. Supp. 2d 391, 410 (W.D. Pa. 2012) (collecting cases). As noted above, the Court concludes that viewing the facts in the light most favorable to Ms. Rankin, it would have been unreasonable for Defendants to believe that Ms. Rankin was not entitled to possession of the residence on September 23, 2010. Therefore, she properly has stated a claim for a Fourth Amendment seizure of her possessory interest in her residence on September 23, 2010. With the *Soldal* case holding in 1992 that unlawful evictions violate the Fourth Amendment, such a right was clearly established for qualified immunity purposes, and that claim will persist.

i.   Fourteenth Amendment

The *Soldal* Court did not have before it, however, a procedural due process claim. 506 U.S. at 60 n.5. It follows from *Abbott*, 164 F.3d 141, however, a Fourteenth Amendment procedural due process claim could stand alongside a Fourth Amendment claim for a seizure of real property, just as for a seizure of personal property. *See Gerhart v. Com. of Pa.*, CIV.A. 09-CV-1145, 2009 WL 2581715, at *4 (E.D. Pa. Aug. 13, 2009); *Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009) (permitting procedural due process claims, along with Fourth Amendment claims, surrounding eviction to survive motion to dismiss). Therefore, as above, Plaintiff has asserted a claim for a deprivation of property without due process of law; the remaining question is whether the state has provided her the adequate process to which she is due.

The parties' briefing on this point has not greatly illuminated this issue. Defendants invoke *Hudson* and *Parratt* as grounds for dismissal, but do not point to state court postdeprivation remedies they believe are adequate in that context. Plaintiff observes that

*Hudson* and *Parratt* do not require that she exhaust her state court remedies before bringing a §
1983 claim, but she also does not argue why she believes any remedies the state affords her are
inadequate. However, under Pennsylvania law, Plaintiff would have a state postdeprivation
remedy, at least in the form of a civil cause of action. "An eviction is an act by a landlord or a
third person that interferes with a tenant's possessory right to the demised premises. If that act is
wrongful, the tenant may sue for damages in trespass or assumpsit." *Kuriger v. Cramer*, 498
A.2d 1331, 1338 (Pa. Super. Ct. 1985) (internal citation omitted); *see also Kohl v. PNC Bank
Nat. Ass'n*, 912 A.2d 237, 248-49 (Pa. 2006) ("it is settled in this state that any wrongful act of
the landlord which results in an interference of the tenant's possession, in whole or in part, is an
eviction for which the landlord is liable in damages to the tenant."). And as noted above, for a
random and unauthorized act of a government official, postdeprivation process is all that would
be constitutionally due. *See Brown*, 269 F.3d at 213. The Court can discern no reason, nor has
Plaintiff offered any, as to why these state law remedies would be inadequate for her under the
reasoning of *Brown*. Therefore, Plaintiff's procedural due process claim will be dismissed.

### d. *Fourteenth Amendment Substantive Due Process Claims*

Plaintiff asserts that each of the above-described actions also violated her substantive due
process rights. However, those claims are barred by the so-called "explicit source rule." This
Court recently explained that rule in *Posey v. Swissvale Borough*, 2:12-CV-955, 2013 WL
989953 (W.D. Pa. Mar. 13, 2013):

> In *Albright*, the Supreme Court held that, in a § 1983 case, "[w]here a particular
> Amendment 'provides an explicit textual source of constitutional protection'
> against a particular sort of government behavior, 'that Amendment, not the more
> generalized notion of 'substantive due process,' must be the guide for analyzing
> these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (internal citation
> omitted). The plurality noted that because the plaintiff alleged he was prosecuted
> without probable cause, he could only rely on the protections of the Fourth

Amendment and not "substantive due process, with its scarce and open-ended guideposts." *Id.* at 275 (internal quotation omitted).

*Id.* at *14; *see also Torres v. McLaughlin,* 163 F.3d 169, 172 (3d Cir. 1998). As in the arrest scenario, the alleged various searches and seizures perpetrated fall squarely within the protections of the Fourth Amendment, as the above analysis demonstrates. Therefore, Plaintiff's Fourteenth Amendment substantive due process claims will be dismissed with prejudice.

## B. STATE LAW CLAIMS

In addition to asserting federal § 1983 claims, Plaintiff asserts six state law causes of action against Defendants: (1) conversion; (2) trespass; (3) intentional infliction of emotional distress (IIED); (4) civil conspiracy; (5) breach of contract; and (6) unjust enrichment; over which she asks this Court to exercise supplemental jurisdiction, 28 U.S.C. § 1367. 2d Am. Compl. ¶¶ 59-79. The causes of action in claims (1) through (4) cover the same wrongful actions of the Smithburgers as Plaintiff's § 1983 claims, while (5) and (6) relate to events that occurred before August 30, 2010, and involving Ms. Rankin's repairs to the home and lack of compensation from Mrs. Smithburger.

### 1. Statute of Limitations

Plaintiff's claims for conversion, trespass, and IIED are also subject to the Commonwealth's two-year statute of limitations. 42 Pa. C.S. § 5524. In Pennsylvania, civil conspiracy claims borrow the statute of limitations of their underlying wrongs: because Plaintiff alleges conspiracy with regard to the conversion, trespass, and IIED claims, the statute of limitations for the conspiracy claim is also two years. *See Kingston Coal Co. v. Felton Min. Co., Inc.,* 690 A.2d 284, 287 (Pa. Super. Ct. 1997).

Plaintiff's breach of contract claim based on her lease of real property is subject to a four-year statute of limitations, 42 Pa. C.S. § 5525(a)(8); *Basciano v. L & R Auto Parks, Inc.,* 2:11-

21

CV-1250-JD, 2012 WL 440653, at *10 (E.D. Pa. Feb. 10, 2012), as is her unjust enrichment claim related to the same, *Colonial Assur. v. Mercantile & Gen. Reinsurance Co., Ltd.*, 130 F. App'x 607, 609 (3d Cir. 2005). Because the allegations in the Second Amended Complaint begin in July 2010, well before the four-year statutes of limitations would be implicated, they do not appear to bar Plaintiff's breach of contract or unjust enrichment claims.

As with Plaintiff's § 1983 claims, the Court must examine whether Plaintiff's state law claims sounding in events prior to September 21, 2010 may be considered under (1) the continuing violations doctrine or (2) special accrual rules unique to conspiracy claims. This is because while federal law governs the accrual of statute of limitations for a federal §1983 cause of action, state law governs the accrual of state causes of action. *See O'Connor*, 440 F.3d at 130; *Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 597 (D. Del. 1990). As with her federal claims, however, Plaintiff's state law claims are still cut off at the two-year mark.

### a. Continuing Violations Doctrine

Pennsylvania courts have not spoken of a "continuing violations doctrine" to the extent that federal courts have. One area in which Pennsylvania courts have applied a continuing violations theory is in the context of Title VII and Pennsylvania Human Rights Act (PHRA) employment discrimination claims, especially in the wake of *Morgan. See Girard Fin. Co. v. Pa. Human Relations Comm'n*, 52 A.3d 523, 531 (Pa. Commw. Ct. 2012), *reargument denied* (Sept. 13, 2012); *Barra v. Rose Tree Media Sch. Dist.*, 858 A.2d 206, 213 (Pa. Commw. Ct. 2004). One court also applied the doctrine to a federal § 1983 claim. *Allen v. Bistline*, No. 1047 C.D. 2007, 2008 WL 9396740, at *3 (Pa. Commw. Ct. Feb. 13, 2008) (unreported).[9] However, outside those limited areas, Pennsylvania courts have either rejected the theory outright, *Fleming*

---

[9] Additionally, Pennsylvania courts apply the concept of a "continuing trespass" in the particular context of physical trespasses to real property. *See, e.g., Cassel-Hess v. Hoffer*, 44 A.3d 80, 85 (Pa. Super. Ct. 2012).

v. *Rockwell*, 500 A.2d 517, 519 (Pa. Commw. Ct. 1985), or, viewing the doctrine skeptically, found that the facts before them presented no such "continuing violation," *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999); *Curley v. Smeal*, 41 A.3d 916, 920 n.4. (Pa. Commw. Ct. 2012); *Casner v. Am. Fed'n of State, Cnty. & Mun. Employees*, 658 A.2d 865, 871 (Pa. Commw. Ct. 1995). Instead, Pennsylvania courts have maintained the following view of accrual of causes of action:

> Our analysis begins with the principles in this area of the law that are settled. . . . In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion. *Kapil v. Association of Pa. State College and Univ. Faculties,* 470 A.2d 482, 485 (1983). Thus, we have stated that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 468 A.2d 468, 471 (1983). Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted. *See Ayers v. Morgan,* 154 A.2d 788, 791 (1959). . . . Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action.

*Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).

In this Court's view, this Pennsylvania rule is largely similar to the rule expressed by the United States Supreme Court in *Morgan*, 536 U.S. 101, to the extent that it holds that "discrete acts" cannot be considered as part of "continuing violations" because they create completed torts in themselves. As the Court has explained above, the alleged wrongs that Ms. Rankin suffered, interferences with her property and her home at the hands of the Smithburgers, constituted injuries both immediately discoverable and promptly completed.[10] Therefore, just as under the *Morgan* rule, under Pennsylvania statute of limitations jurisprudence, Plaintiff is not permitted to recover for torts committed against her prior to September 21, 2010, and those claims are dismissed.

---

[10] Therefore, neither of the equitable exceptions tolling the running of the statute of limitations recognized in *Fine,* 870 A.2d at 857, the "discovery rule" and "the doctrine of fraudulent concealment", is present here.

*b. Civil Conspiracy Accrual*

While a comparison of *Fine* with *Morgan* reveals that the standards in Pennsylvania surrounding "continuing violations" are largely congruent to the federal standards, it is less apparent whether the same can be said for Pennsylvania's rule for when the statute of limitations for a civil conspiracy begins to run. The Pennsylvania Supreme Court has not clearly ruled on the issue, and in the same year, the Third Circuit and the Pennsylvania Superior Court each articulated different formulations of the rule. *Compare Ammlung v. City of Chester*, 494 F.2d 811, 814-15 (3d Cir. 1974) ("Under Pennsylvania law, the statute of limitations with respect to a conspiracy begins to run from *each overt act* causing damage.") (emphasis added) *with Baker v. Rangos*, 324 A.2d 498, 510 (Pa. Super. Ct. 1974) ("the statute of limitations does not begin to run until after the commission of the *last act* of the conspiracy") (emphasis added). This Court recently examined the standard a federal district court must apply when considering conflicting pronouncements of our Court of Appeals and Pennsylvania lower courts.

> Of course, when the Pennsylvania Supreme Court speaks on a particular point of Pennsylvania law, its "pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). When the Pennsylvania Supreme Court is silent regarding a state law issue, a federal court must predict how that Court would resolve that issue. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). A federal court must look to the holdings of the state's lower courts and accord their decisions due deference. *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). When the federal court issuing the prediction is our Court of Appeals, the district courts in this Circuit are to apply its predictive holding to legal questions arising under that particular state law "unless the state supreme court issues a contrary decision." *Largoza v. Gen. Elec. Co.*, 538 F.Supp. 1164, 1166 (E.D. Pa. 1982).

*Lynn ex rel. Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 625 (W.D. Pa. 2012). Here, the Third Circuit pronounced its view of Pennsylvania law in *Ammlung* in 1974, and reiterated it a

decade later. *See Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984) ("Other jurisdictions, including those of this circuit, have applied the rule that the period runs from each overt act causing damage. *See Ammlung* . . . (Pennsylvania law)."). Therefore, as in *Lynn*, this Court is bound by the Third Circuit's interpretation in *Ammlung* and *Wells*.

However, the Court also notes that while at first blush the Third Circuit and Superior Court rules regarding civil conspiracies may appear to be incompatible, they may not in fact be so. The First Circuit has considered the same apparent discord:

> We recognize that some courts have spoken of the "last overt act" of a civil rights conspiracy as the time from which the statute begins to run, *e. g., Crosswhite v. Brown*, 424 F.2d 495 (10th Cir. 1970), but do not believe those courts meant to depart from the traditional rule in civil conspiracies that the mere fact of a conspiracy does not toll the statute of limitations with respect to earlier clear-cut violations of rights that have not been concealed from the plaintiff." If a plaintiff were unable to discover the earlier violations because of fraudulent concealment the statute of limitations could be tolled; conversely, "overt acts" in a conspiracy that fall short of being separate violations of rights would not start the statute running.

*Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402, 404 n.1 (1st Cir. 1978)); *see also Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001) (quoting *id.*). Thus, the First Circuit considered the same problem of "piggy-backing" untimely claims that the Third Circuit confronted in *Wells*, 728 F.2d at 217, and reasoned that even cases that used the phrase "last overt act" were not condoning a contrary interpretation of the law, but just that they had not considered the ramifications of that language. In other words, "each overt act" is the more precise way of saying "last overt act."

In this Court's view, the First Circuit's insight may offer the proper way to consider *Baker* and its progeny. As far as this Court is aware, only two Pennsylvania lower court cases, and one federal district court, have applied the *Baker* rule. *See Borough of Shippensburg v. Kelley*, 1996-108, 4 Pa. D&C 5th 208, 218 (Pa. Ct. Com. Pl. Sept. 15, 2006); *Beasley v. Young*,

2012 WL 6761742 (Pa. Ct. Com. Pl. Dec. 3, 2012); *Colgate-Palmolive Co. v. Tandem Indus.*, CIV.A. 3:07-CV-1709, 2009 WL 1011059 (M.D. Pa. Apr. 9, 2009), *aff'd in part*, 485 F. App'x 516 (3d Cir. 2012).[11] In *Beasley*, the court held that even the last overt act in furtherance of the conspiracy fell outside the statute of limitations, and so did not need to consider any of the prior overt acts. *See* 2012 WL 6761742. In both *Kelly* and *Colgate-Palmolive*, the plaintiffs might not have had reason to discover the injuries they suffered as a result of the conspiracies' underlying acts, and therefore the courts permitted *both* the underlying acts and the conspiracy claims to be tolled. *See Colgate-Palmolive*, 2009 WL 1011059, at \*5-6; *Kelly*, 4 Pa. D&C 5th at 218. And *Baker* itself had, curiously, dismissed the underlying tort claims when it considered the statute of limitations for conspiracy claims. 324 A.2d at 501, 510.[12] Therefore, out of *Baker* and its progeny, not a single case involved the scenario where underlying claims would be untimely but the conspiracy might not be, and therefore none considered whether adherence to its "last overt act" articulation might allow for the piggy-backing of underlying claims that fell outside the statute of limitations.

In contrast, the "each overt act" articulation of the Third Circuit in *Ammlung* has been reiterated by lower federal courts applying Pennsylvania law, some of which have explicitly considered such a possibility (and all of which post-dated *Baker*). *See, e.g.*, *Loughrey v. Landon*, 381 F. Supp. 884, 886 (E.D. Pa. 1974); *Safeguard Mut. Ins. Co. v. Miller*, 477 F. Supp. 299, 308 (E.D. Pa. 1979); *Henderson v. Fisher*, 506 F. Supp. 579, 582 (W.D. Pa. 1981); *Windward Agency, Inc. v. Cologne Life Reinsurance Co.*, CIV. A. 95-CV-7830, 1996 WL 392539 (E.D. Pa.

---

[11] The Third Circuit in *Colgate-Palmolive* did not have occasion to consider the statute of limitations issue, because the defendants whose claims it implicated were no longer parties to the action at the time of appeal. *See* 485 F. App'x at 516 n.1.

[12] And the case on which *Baker* relied in support of its "last overt act" statement was *Comm. v. Fabrizio*, 176 A.2d 142 (Pa. Super. Ct. 1961), a criminal conspiracy case that itself only considered criminal conspiracy cases; the question before this Court is the appropriate rule in *civil* conspiracies.

July 11, 1996), *Harry Miller Corp. v. Mancuso Chemicals Ltd.*, 469 F. Supp. 2d 303, 318 (E.D. Pa. 2007). The *Harry Miller Corp.* case is particularly instructive: there, the statute of limitations also straddled the alleged overt acts in furtherance of the conspiracy. Applying the Third Circuit's holding in *Ammlung*, 494 F.2d 811, and reasoning in *Wells*, 728 F.2d 209, regarding "piggy backing," the district court held, "[a] plaintiff may seek redress, however, only for those overt acts that occurred during the statutory period," and permitted the plaintiff "to seek relief only for those injurious overt acts that occurred on or after" the statute of limitations cutoff date. *Harry Miller Corp.*, 469 F. Supp. 2d at 318.

Synthesizing these cases, this Court concludes that the *Ammlung* "each overt act" rule is the rule that governs civil conspiracies in Pennsylvania. This is both because it is the Third Circuit's articulation of a rule that the Pennsylvania Supreme Court has not opined on, and because although Pennsylvania lower courts have articulated the rule differently, referring to the "last overt act," it is very likely that they would also apply the more precise "each overt act" rule if confronted with a case implicating the "piggy-backing" problem.

For the same reasons that the Court explained above in relation to Plaintiff's § 1983 conspiracy claim, under the "each overt act" rule, Plaintiff's state law civil conspiracy claims are barred to the extent that they seek relief for injurious acts that occurred before September 21, 2010, and are permitted to continue to the extent that they seek relief for acts on or after September 21, 2010. *See Harry Miller Corp.*, 469 F. Supp. 2d at 318.

### 2. **Underlying Claims: Conversion, Trespass, IIED, Civil Conspiracy**

Turning to the merits of the state law claims that mirror Plaintiff's § 1983 claims, the Court concludes that each sufficiently states a cause of action to survive a motion to dismiss.

27

Conversion is defined under Pennsylvania law as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa. Super. Ct. 2000) (internal quotation omitted). As noted above in the context of Ms. Smithburger's procedural due process claim for the seizure of her personal property, she sufficiently alleged that the Smithburgers wrongfully deprived her of her interests in her property (or such interest was interfered with) when defendants allegedly took, burned, and/or denied Ms. Smithburger's access to a number of her possessions on September 23 and 24, 2010. Viewing the facts in the light most favorable to Ms. Rankin, the Court cannot also say that the Smithburgers acted with lawful justification for their actions, an indeed it seems that they acted in the face of such unlawfulness.

Trespass is defined under Pennsylvania law as the "unprivileged, intentional intrusion upon land in possession of another." *Boring v. Google Inc.,* 362 F. App'x 273, 280 (3d Cir. 2010) (citing *Kopka v. Bell Tel. Co.,* 91 A.2d 232, 235 (1952)). Plaintiff has sufficiently pled that Mr. Smithburger committed the tort of trespass when he intruded on her property and entered her home on September 23, 2010 without her permission and without lawful authority, given that she was entitled to possession at least until September 24, 2010.

Turning to intentional infliction of emotional distress ("IIED"), Defendants argue that their conduct was not sufficiently "outrageous" to support a claim under that tort. Defs.' Br. Support Mot. Dismiss at 11-12, ECF No. 23.

> There remains some question as to whether the courts of this Commonwealth recognize a cause of action for intentional infliction of emotional distress. *See, e.g., Hoy v. Angelone,* 720 A.2d 745, 753–54 n. 10 (Pa. 1998). However, our Supreme Court has indicated that in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.

*Id.* at 754. In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct. *Fewell v. Besner,* 664 A.2d 577, 582 (Pa. Super. Ct. 1995). . . . [The conduct must be] "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."

*Swisher v. Pitz,* 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (internal quotation omitted). The element of outrageousness is for the court to determine in the first instance. *Id.*

While Pennsylvania courts have limited the types of activities they have found to be "outrageous" as a matter of law, *see Swisher,* 868 A.2d at 1231 (collecting cases), the Court cannot say that this stage in the proceedings that the Smithburgers' conduct was not outrageous as a matter of law. The events in the Second Amended Complaint detail not only an alleged unlawful eviction at the hands of a landlord with the assistance of a state official, but a situation where a constable who allegedly had at best rather specious authority to effect an eviction abused that authority to serve personal ends. Moreover, the fact that the Defendants allegedly went above and beyond the measures necessary to effect even a more run-of-the mill self-help eviction – removing Plaintiff and her possessions from the property – but instead made a bonfire out of those possessions before her very eyes, strikes this Court as conduct easily within the realm of outrageousness. Facts elicited in the discovery to come should illuminate the exact events of September 23 and 24, 2010, and the motivations for those acts, but for now, Plaintiff's claim for IIED will be permitted to stand.

### 3. Supplemental Jurisdiction; Underlying Claims: Breach of Contract and Unjust Enrichment

Under 28 U.S.C. § 1367(a), the Court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action" within the Court's original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* In the Third Circuit, three requirements must be satisfied for a court to

exercise supplemental jurisdiction: "[1] The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). [2] The state and federal claims must derive from a common nucleus of operative facts, and [3] the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding." *MCI Telecomm'ns Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1102 (3d Cir. 1995) (some internal citations omitted). The first prong is easily met here: Plaintiff has alleged a number of viable § 1983 claims that confer subject matter jurisdiction on the Court. While there is no clearly defined test for a "common nucleus of operative facts," which is instead considered on a case-by-case basis, *see Lyon v. Whisman,* 45 F.3d 758, 760 (3d Cir. 1995), "mere tangential overlap of facts is insufficient, but total congruity between the operative facts of the two cases is unnecessary." *Nanavati v. Burdette Tomlin Mem'l Hosp.,* 857 F.2d 96, 105 (3d Cir. 1988).

On the facts of this case, the nexus between Ms. Rankin's federal § 1983 claims and her state law claims described above is met, because they arise out of the identical acts on the part of Defendants. *See Lyon,* 45 F.3d at 761 ("when the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious"). However, that same nexus is not present for Plaintiff's breach of contract and unjust enrichment claims (collectively, "state contractual claims"). In support of those claims, Ms. Rankin alleges that when she entered into to a rental agreement with Ms. Smithburger, they agreed that Ms. Rankin would "receive a credit for cleaning and making repairs," which was breached when Ms. Smithburger "rais[ed] the rent and refus[ed] to give Plaintiff credit for making the repairs" such as purchasing home supplies such as plaster, paint, wallpaper, and doors, around July 2010. 2d Am. Compl. ¶¶ 14, 62, 63; *see id.* ¶¶ 60-67. Ms. Rankin asks in order to remedy that wrong that she receive payment for her expenditures. *Id.* ¶ 67. In contrast, in her federal § 1983 claims, she alleges that Mr.

Smithburger, acting under color of state law, conspiring with his wife, a private actor, deprived her of rights secured by the United States Constitution in entering her home, seizing her property, and wrongfully prematurely ousting her from her residence in late September 2010. *See* 2d Am. Compl. ¶¶ 24-37. By operation of the statute of limitations, the federal claims also necessarily cannot extend to events before September 21, 2010.

Although both the federal and state contractual claims relate to the same individuals (with the exception of Mr. Smithburger), they deal with two different sets of operative facts: the first relate to reimbursement for repairs to a residence, while the second relate to a subsequent unlawful eviction. Temporally, the District Magistrate Judge's Order of August 30, 2010 finding judgment in favor of Ms. Smithburger and granting her possession of the residence marks a particularly clear dividing line between these two disputes. The proof for these violations, along with damages, would also greatly differ. The former would involve an inquiry into whether the rental agreement contemplated payment for repairs, when and what measures Ms. Rankin took in July to repair the residence, and whether she was adequately compensated; the latter would look to the events of September 23 and 24, and consider whether the Smithburgers entered Ms. Rankin's home without her permission, wrongfully destroyed her personal property, and evicted her without legal authority. A comparison of the two types of claims reveals that they lie sufficiently nearer to a "mere tangential overlap of facts" than a "total congruity," such that they do not sufficiently create a "common nucleus of operative facts," and an individual would not expect them to be tried together. Therefore, the Court may not exercise supplemental jurisdiction over Plaintiff's breach of contract and unjust enrichment claims, and they are dismissed without prejudice to being reasserted in state court.

## C. CONCLUSION

The facts alleged in the Second Amended Complaint paint a picture of the results of a toxic mix of the exercise of local police powers motivated by personal interests and animosity. They sufficiently allege hallmark constitutional violations, if timely. Some are, some are not. All Plaintiff's claims sounding in events prior to September 21, 2010 are barred by the statute of limitations, including the conspiracy claims, and are dismissed with prejudice to that extent. The following federal § 1983 counts will however remain: seizure of personal property (Fourth Amendment), search of home (Fourth Amendment), seizure of home/eviction (Fourth Amendment), and conspiracy to commit the same; while all of the federal § 1983 counts under the Fourteenth Amendment will be dismissed. Plaintiff's state law claims of conversion, trespass, intentional infliction of emotional distress, and civil conspiracy will remain; while Plaintiff's state law claims of breach of contract and unjust enrichment will be dismissed without prejudice to being reasserted in state court, *see* 28 U.S.C. § 1367.

An appropriate order will issue.

Mark R. Hornak
United States District Judge


Dated: July **11**, 2013

cc:     All counsel of record